UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

| | |
|---|---|
| ESTEL HESLER, ) | |
| ) | |
| Plaintiff, ) | Civil No. 2:16-cv-89-JMH |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL,[1] Acting ) | **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\*\*

Plaintiff Estel Hesler brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.

1

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

On June 17, 2013, Plaintiff protectively filed a Title II application for disability insurance benefits ("DIB"). [TR 124-25]. He filed a Title XVI application for supplemental security

2

income ("SSI") on July 13, 2013. [TR 398-417A]. In both applications, Plaintiff alleged disability as of October 8, 2008. [TR 124-25, 398-417A]. Plaintiff's claims were denied initially and on reconsideration. [TR 43-76, 418-19].

On March 9, 2015, Administrative Law Judge Greg Holsclaw conducted an administrative hearing at Plaintiff's request. [TR 422-94]. ALJ Holsclaw ruled that Plaintiff was not entitled to benefits on July 2, 2015. [TR 15-27]. In his decision, ALJ Holsclaw noted that Plaintiff had previously filed an application for benefits, in which he also identified October 8, 2010 as his onset date.[2] [*Id.*]. ALJ Karen Jackson denied that application via written decision on January 13, 2012. [TR 34-41]. Because Plaintiff had not come forward with any evidence to justify reopening his previous application, ALJ Holsclaw held that *res judicata* applied up to January 13, 2012. [*Id.*]. ALJ Holsclaw then proceeded with his analysis for the remainder of the time period at issue. [*Id.*].

At Step 1, ALJ Holsclaw found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [TR 20]. At Step 2, he concluded that Plaintiff had the following

---

[2] Plaintiff's prior claim went through many of the same steps as the instant matter. It was denied initially and on reconsideration. [TR 31-41]. ALJ Jackson held an administrative hearing at Plaintiff's request, then issued her written decision. [*Id.*].

3

severe impairments: reading disorder, disorder of written expression, anxiety disorder (not otherwise specified), borderline intellectual functioning/mild mental retardation/intellectual disability, coronary artery disease (status post stenting of the right coronary artery and left anterior descending artery), chronic obstructive pulmonary disease ("COPD"), and jaw pain (status post multiple surgeries secondary to mandibular fracture). [TR 21].

At Step 3, ALJ Holsclaw determined that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR 21-22]. In reaching this conclusion, ALJ Holsclaw found that Plaintiff's history of mandibular fracture did not meet the requirements of Listing 1.08 because it did not require continuing surgical management for restoration of major function. [*Id.*]. He also decided that Plaintiff's COPD did not meet the requirements of Listing 4.04C because it did not result in serious limitations in his ability to complete activities of daily living. [*Id.*]. Finally, ALJ Holsclaw determined that Plaintiff's mental impairments did not meet the requirements of Listings 12.04, 12.05, or 12.06 because Plaintiff had only mild restriction of activities of daily living and moderate restriction

4

of social functioning, and had not experienced extended episodes of decompensation. [*Id.*].

At Step 4, ALJ Holsclaw found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) as follows:

> Lift and carry 15 pounds occasionally and ten pounds frequently; stand and walk six hours of an eight hour day, and for no more than one hour at a time; sit for six hours a day, for no more than one hour at a time; push and pull up to the exertional limitations; frequently balance; occasionally stoop, kneel, crouch, or crawl; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; no work in areas of concentrated heat or cold; no work around dangerous moving machinery or unprotected heights; and no work in areas with concentrated dust, fumes, gases, or other pulmonary irritants. He is limited to simple, routine work; can maintain attention and concentration for two hour intervals necessary to complete tasks; can occasionally interact with co-workers, supervisors, and the general public; can tolerate occasional, gradual changes in the workplace setting or environment; should have no fast-paced production quotas or goals; and no requirement for literacy, with oral instructions and initial demonstrations in an object focused work environment.

[TR 22-26]. He then concluded that Plaintiff was unable to perform any past relevant work. [TR 26]. However, he noted that transferability of job skills was not material to the disability determination because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." [*Id.*].

Nevertheless, ALJ Holsclaw proceeded to the final step of the sequential evaluation. [TR 26-27]. At Step 5, he determined that there were a significant number of jobs in the national economy that Plaintiff could perform. [*Id.*]. ALJ Holsclaw based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. [*Id.*]. The VE testified that such an individual could find work as a grader/sorter (1,300 Kentucky/87,000 nationally) or inspector (5,500 Kentucky/296,000 nationally). [*Id.*]. Based on the testimony of the VE, ALJ Holsclaw found that Plaintiff was capable of making a successful adjustment to other work, and thus, concluded that he was not under a "disability," as defined by the Social Security Act. [TR 29].

This became the final decision of the Commissioner when the Appeals Council denied review on March 29, 2016. [TR 9-11]. Plaintiff filed the instant action on May 25, 2016. [DE 1]. Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are now ripe for review. [DE 7, 8]. Plaintiff advances two arguments on appeal, both of which concern the ALJ's analysis at Step 3.[3] First,

---

[3] In his Motion for Summary Judgment, Plaintiff summarizes his arguments as such: "The ALJ failed to properly consider Listing 12.05C in his analysis at the third step of the sequential evaluation." [DE 7 at 5]. To clarify, Plaintiff does not actually contend that ALJ Holsclaw completely failed to address Listing

6

Plaintiff attacks ALJ Holsclaw's finding that he did not have deficits in adaptive functioning that manifested prior to age 22, insisting that this conclusion was not supported by substantial evidence. Plaintiff then complains that ALJ Holsclaw's decision to reject his IQ test results was not supported by substantial evidence. The Court will address each of these arguments in turn.

## III.

"The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, and work experience.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1525(a)). "In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Id.* "[F]or a claimant to show that his impairment matches a Listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 531, 530 (199) (emphasis in original).

---

12.05C. Rather, he disagrees with the manner in which ALJ Holsclaw conducted his analysis of Listing 12.05C.

"To meet the requirements of Listing 12.05C, a claimant must show: (1) significant subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (i.e. before the age of twenty-two); (2) the claimant has a verbal, performance, or full scale IQ of 60 through 70; and (3) the claimant suffers from a physical or other mental impairment imposing an additional and significant work-related limitation on function."[4] *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 490 (6th Cir. 2010); *see also Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987) (explaining that the claimant bears the burden of demonstrating that he or she meets or equals a listed impairment).

In evaluating the first element, some courts have held that, absent any evidence of head trauma, an IQ test creates a rebuttable presumption of a fairly constant IQ throughout the patient's life. *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001). However, the United States Court of Appeals for the Sixth Circuit has rejected such an approach, stating instead that "[a] claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits

---

[4] Listing 12.05C was deleted from the Listing of Impairments on January 17, 2017. *See* 81 Fed. Reg. 66138, 2016 WL 5341732 (Sept. 26, 2016). Because the SSA has indicated that it does not intend for the revised Listings to apply retroactively to final agency decisions rendered before the changes took effect, the Court will analyze Plaintiff's arguments as if Listing 12.05C still exists. *Id.*

during his developmental period." *Turner*, 381 F. App'x at 491-92; *see also Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

As for the second element, "the mere fact of a qualifying IQ score does not require that the ALJ find mental retardation under [the Listing of Impairments] when substantial evidence supports the contrary conclusion." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012); *see also Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991) (explaining that a valid IQ score "reflect[s] the claimant's true abilities as demonstrated by his or her performance at work, household management and social functioning").

In his analysis, ALJ Hosclaw stated as follows:

> Finally, the Paragraph "C" criteria of Listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 with deficits in adaptive functioning manifesting prior to age 22, and a physical or other mental health impairment imposing an additional and significant limitation of function. As discussed in the previous decision, past intelligence testing had found full scale IQs of 57 and 69. However, the undersigned finds that these scores are not valid, as they are inconsistent with the claimant's past work, which involved electrical and plumbing repairs, tasks incompatible with such reduced cognitive functioning.

[TR 22].

Plaintiff "concede[s] that the record is [de]void of any test results confirming that [his] mental deficits manifested before

9

age 22." [DE 7 at 7]. However, he insists that ALJ Holsclaw's finding that any deficits in adaptive functioning did not manifest prior to age 22 is not supported by substantial evidence. Plaintiff argues that his qualifying IQ scores at age 45 created a rebuttable presumption of a fairly constant IQ throughout his life, which ALJ Holsclaw failed to consider in his analysis of Listing 12.05C.

Even if the Court assumes that Plaintiff's recent IQ test results are valid, a subject that will be discussed *infra*, the Sixth Circuit has refused to recognize such a rebuttable presumption. Under Sixth Circuit case law, Plaintiff must present evidence beyond his current IQ scores to establish that deficits in adaptive functioning manifested during his developmental years, and by Plaintiff's own admission, he did not do so. Thus, ALJ Holsclaw's finding that Plaintiff failed to satisfy the onset criteria of Listing 12.05C is supported by substantial evidence.

Next, Plaintiff argues that the ALJ's decision to reject his IQ tests was not supported by substantial evidence.[5] He insists that ALJ Holsclaw did not give sufficiently detailed reasoning to support his decision, choosing instead to rely heavily on the prior

---

[5] As a practical matter, the Court is not obligated to consider this argument because it has already upheld the ALJ's analysis of the onset criteria, making it impossible for Plaintiff to satisfy *all* of the requirements of Listing 12.05C. Thus, the ALJ could not have erred in finding that Plaintiff was not conclusively disabled at Step 3. *Sullivan*, 493 U.S. at 530. However, the Court will discuss Plaintiff's second argument out of an abundance of caution.

10

administrative decision of ALJ Jackson, who found that Plaintiff's IQ scores were inconsistent with his "long history of full time employment."[6] While it is true that ALJ Holsclaw reached the same conclusion that ALJ Jackson articulated, this does not necessarily mean that the conclusion is unsupported by substantial evidence. Moreover, the record reflects that ALJ Holsclaw explicitly rejected the IQ test results on the grounds that they were inconsistent with Plaintiff's self-described work history as a janitor.[7]

Specifically, ALJ Holsclaw noted that Plaintiff had a history of performing electrical and plumbing repairs while working as a janitor. He then reasoned that such tasks were inconsistent with the degree of reduced cognitive functioning reflected in the IQ tests. These considerations qualify as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Cutlip*, 25 F.3d at 286; *Courter*, 479 F. App'x at

---

[6] Plaintiff insists that ALJ Holsclaw implicitly reopened the alleged period of disability beginning on October 8, 2010 and ending on January 13, 2012. However, as discussed *supra*, ALJ Holsclaw clarified that *res judicata* applied to this period. While ALJ Holsclaw is bound by findings made by ALJ Jackson at a step in the disability determination process, he is not bound by her subsidiary findings, such as her decision to reject the IQ test results. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997); Acquiescence Ruling 98-4(6) n. 5, 1998 WL 283902 (providing guidance on the application of *Drummond*). Thus, ALJ Holsclaw's own treatment of those test results did not amount to a *de facto* reopening of Plaintiff's prior application. *Id.*

[7] Plaintiff briefly contends that ALJ Holsclaw's treatment of the IQ tests is more appropriate for a Step 4 analysis than a Step 3 discussion. [DE 7 at 5]. However, the Sixth Circuit has affirmed a similar Step 3 analysis, indicating that ALJ Holsclaw's approach was not flawed. *See Courter*, 479 F. App'x at 721-22.

721-22 (affirming the ALJ's Step 3 analysis, in which he discounted the claimant's qualifying IQ score on the grounds that she also had a non-qualifying IQ score and extensive work history). Thus, the Court finds that ALJ Holsclaw's decision to reject Plaintiff's IQ scores is supported by substantial evidence.

**IV.**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiff Estel Hesler's Motion for Summary Judgment [DE 7] be, and is, hereby **DENIED**;

(2) The Commissioner of Social Security's Motion for Summary Judgment [DE 8] be, and is, hereby **AFFIRMED**; and

(3) A Judgment will issue contemporaneously with this Memorandum Opinion and Order.

This the 24th day of April, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge